**Norma K. VERRILL, Social Security No. 007–30–8969, Plaintiff,**

**v.**

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.**

**Civ. No. 84–0361 P.**

United States District Court, D. Maine.

April 23, 1985.

David Smart, Jefco, May & Smart, Portsmouth, N.H., for plaintiff.

Paula D. Silsby, Asst. U.S. Atty., Portland, Me., for defendant.

MEMORANDUM OF DECISION

GENE CARTER, District Judge.

This is an action under 42 U.S.C. § 405(g) for review of the final decision of the Secretary of Health and Human Services,

which denied Claimant's application for disability insurance benefits. Claimant is a 50-year-old woman who alleged that she became disabled on August 7, 1980 and remains disabled to the present. Claimant's application was denied administratively, and after hearing, by an Administrative Law Judge (ALJ), who dismissed that part of the claim relating to the period before the end of October 1982. The reason for the dismissal was that Claimant had been granted benefits for a closed period of disability beginning August 7, 1980 and ending August 31, 1982. The case is before the Court on Claimant's Motion for Summary Judgment and Defendant's Motion for Order Affirming the Decision of the Secretary.

■ The Court has thoroughly reviewed the entire record, including the transcript of the hearing below, the exhibits, and the briefs submitted by counsel. After careful consideration the Court finds that the case must be remanded for more specific findings on the issue of whether Claimant's impairments meet the requirements of or are equivalent to the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix I. The Court also finds that Secretary's determination of Claimant's residual functional capacity unsupported by substantial evidence.

The ALJ found that

claimant has severe status post multiple lumbosacral fusions with a solid fusion mass, degenerative osteoarthritic changes of the lumbosacral spine, and a history of hiatus hernia, sometimes symptomatic, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.

Record at 18. Claimant's treating physician, Dr. Howell, stated specifically in a letter dated February 4, 1984, that Claimant's spine disorders meet the listings for arthritis and osteoporosis set forth in Appendix 1, § 1.05(A) and (B). Referring to Section 1.05(A) Dr. Howell states: "Arthritis manifested by ankylosis ..." etc. under

number 1, the criteria is very clear. It says, and I quote, "Calcification of the anterior and lateral ligaments" ... "This patient manifests this finding as outlined in this rule and regulation description." Ex. B32, Record at 262. The ALJ rejected Dr. Howell's evaluation, stating that "[w]hile the Claimant does suffer from arthritis and some calcification of the anterior and lateral ligaments, she does not suffer from ankylosis or fixation of the cervical or dorsolumbar spine at any number of degrees of flexion measured from the neutral position let alone at more than 30°." Record at 16. In order to meet the requirements, Claimant must show ankylosis at 30° or more of flexion.

In general, the Court will defer to the superior medical expertise of the Secretary when the reasoning is clear. *Blaisdell v. Heckler,* Civ.No. 84–0125–P (D.Me. March 28, 1983). Here, however, the Court cannot effectively understand why the ALJ and treating physician differ so markedly on the question of ankylosis, with the ALJ finding that it does not exist and the physician implying that there is no question but that it exists.

Ankylosis refers to stiffening, rigidity or fixation of the joint. The Court would assume that the requirement of ankylosis goes to the lack of movement in Claimant's joints, although it is unclear from the language of the regulation whether the joint must be fixed at 30° or more flexion or whether there must be no movement beyond 30° or more. Dr. Howell's examination of July 20, 1983, shows that Claimant has "only about 5% of normal flexion and all of that's in the upper lumbar segments. There is no movement whatsoever in the lower lumbar segments, not at least clinically." Ex. B21. Residual functional capacity assessments done by Drs. Hornberger and Brinkman in July and October 1983 refer to "immobility in lumbar area," "markedly limited flexion," Ex. B22, and "2° to no flexion lumbar spine." Without more specific explanation, the Court cannot adequately assess the ALJ's finding that

this Claimant, who undisputedly [1] has little or no motion in her lumbar spine, does not meet the listed impairment set forth in Section 1.05(A).

The ALJ also found that "[w]hile the Claimant does suffer from generalized osteoporosis, as required by section 1.05(B), there are no documented paravertebral muscle spasms as required nor are there any compression factors documented by X-ray as required." In part, this finding is contrary to the clinical findings of Dr. Hornberger who noted "muscle spasm and markedly limited flexion and osteoarthritic changes in entire spine." Ex. B22. It appears, then, that Claimant's osteoporosis more closely resembles the listed impairments than the ALJ thought.

The regulations provide that the Secretary shall consider whether Claimant's impairments meet, or are equal in severity and duration to, the listed findings. 20 C.F.R. § 404.1526. The ALJ is to compare the symptoms, signs and laboratory findings about Claimant's impairments with the medical criteria shown with the listed impairment. *Id.* "If you have more than one impairment, and none of them meets or equals a listed impairment, we will review the symptoms, signs and laboratory findings about your impairments to determine whether the combination of your impairment is equal to any listed impairments." *Id.*

Following his analysis of why Claimant's impairments do not meet the listings for arthritis set forth in § 1.05(A) and osteoporosis set forth in § 1.05(B), the ALJ stated: "Therefore, the Claimant's impairments do not meet nor are they the medical equivalence in severity of these impairments." Record at 16. The implication of this finding is that because the impairments do not meet the listings they are not the equivalent of the listings either. Since the comparison, if performed, was not made explicit with specific findings, the Court cannot effectively review the ultimate finding of nonequivalence. It is clear to the Court that even if Claimant's arthritis is not ultimately determined to meet the listing in § 1.05(A), each of Claimant's impairments comes close. The record does not show that the ALJ conducted the prescribed analysis of the *combination* of Claimant's impairments to see if they equal a listed impairment. 20 C.F.R. § 404.1526.

The ALJ found that despite her impairments, Claimant has the residual functional capacity to perform the full range of sedentary work. This finding was predicated on the ALJ's determination that Claimant "can sit for extended periods of time utilizing only the normal breaks during the work day to move about or change position." Record at 17. For this determination, the ALJ relied on Claimant's testimony and a residual functional capacity evaluation performed by Dr. Paul Berry. *Id.* After careful review of the record, the Court finds that the finding that Claimant can sit for extended periods of time is not supported by substantial evidence. Claimant testified that she can sit and embroider while watching television for only fifteen minutes or a half hour but must then lie down because she is uncomfortable sitting. Record at 35. On the way to the hearing, a car trip of something over an hour, Claimant's son had to stop the car twice so she could stand and alleviate the discomfort in her back. In no way does Claimant's testimony support the finding that she can sit for extended periods.

The initial medical evaluation of Dr. Berry is, in many respects, difficult to read. The form which he filled out indicates that it is based on an 8 (eight) hour work day. In the blank provided for number of hours Claimant is able to sit, the number filled in looks like a 12 (twelve). This, of course, is not consonant with the directions to determine capacity based on an eight hour day. Moreover, the 12 looks very much like a

---

1. Following an examination on August 25, 1982, Dr. Chen found that Claimant had 50° of flexion. This examination took place at the end of Claimant's previous period of disability, which was determined to have ended on August 31, 1982, and cannot form the basis for a finding during the period now in question.

1/2 without the line indicating that the number is a fraction. The Court is convinced that the latter is the more likely interpretation because, in a letter submitted to the Appeals Council, Dr. Berry stated that "[i]n my opinion, she could not sit for more than a 1/2 hour at a time..." Ex. AC1, Record at 266. Since Claimant cannot sit for extended periods, on remand the ALJ should redetermine her residual functional capacity.

Accordingly it is ORDERED that this case be, and is hereby, REMANDED to the Secretary for proceedings consistent with the opinion herein.

So ORDERED.